**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eva L. Green, | No. CV-12-00713-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Eva L. Green ("Plaintiff" or "the claimant") seeks judicial review of the Commissioner's decision finding her not disabled within the meaning of the Social Security Act. For the reasons that follow, the Court will vacate the Commissioner's decision and remand for an award of benefits.

**I.   Background.**

Plaintiff filed for disability insurance benefits and supplemental security income in August 2009 alleging a disability onset date of November 1, 2007. Her applications were twice denied by state agencies and again by an Administrative Law Judge ("ALJ") that found Plaintiff not disabled within the meaning of the Social Security Act in an opinion dated April 8, 2011. Tr. at 16-25. The Social Security Administration Appeals Council denied a request for review. Tr. at 1-5.

**II.   Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but

less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.    Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a sequential five-step evaluation. The claimant must show (1) she is not currently engaged in substantial gainful employment, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work. If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. If the claimant meets her burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date through the date of his decision. Tr. at 18. At step two, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar spine with radiculopathy and cervical spondylosis that the ALJ categorized as a severe impairment. Tr. at 19. At step three, the ALJ found that the combination of impairments

did not meet or equal one of the listed impairments. Tr. at 20; *see* C.F.R. pt. 404, subpt. P. app. 1. The ALJ then found that Plaintiff had the RFC to perform the full range of sedentary work. Tr. at 20; *see* 20 C.F.R. 404.1567(a) & 416.967(a). With that RFC, the ALJ determined that Plaintiff was capable of performing her past relevant work as a receptionist and an appointment clerk. Tr. at 24. Because he found that Plaintiff could perform past relevant work, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. at 24.

Plaintiff alleges that the ALJ erred by rejecting the opinion of a treating physician without adequate support, by rejecting Plaintiff's subjective complaints without adequate foundation, and by relying on the opinion of an examining physician whose license had been suspended in another state. The Court will address each argument in turn.

### A.     Opinion of Dr. Jatin Daas.

Dr. Jatin Daas is Plaintiff's treating physician. While the "ALJ must consider all medical opinion evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), "[t]he medical opinion of a claimant's treating physician is entitled to 'special weight,'" *Rodriquez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). The ALJ may reject the opinion of a treating or examining physician by making "'findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (internal citation omitted). Furthermore, where the treating physician's opinion is not contradicted by another physician, the ALJ's reasons for rejecting the opinion must be "clear and convincing." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); *see Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("[A]n ALJ may reject a treating doctor's medical opinion, if no other doctor has contradicted it, only for 'clear and convincing' reasons supported by substantial evidence.") (citing *Reddick*, 157 F.3d at 725).

Dr. Daas opined that Plaintiff's pain was severe and the pain would constantly interfere with her attention and concentration. Tr. at 22. He concluded that as a result of her ailments, Plaintiff was capable of less than the full range of sedentary work because she could not lift or carry anything, could stand or walk for less than fifteen minutes during an eight hour workday, and could sit for two to three hours of an eight hour workday. Tr. at 22. The ALJ discounted that opinion, reasoning that it was "not consistent with the greater objective medical evidence of record or Dr. Daas' own treatment notes." Tr. at 22. He also noted that Dr. Daas' assessment was inconsistent with Plaintiff's activities of daily living and that Dr. Daas "uncritically accepted as true" most of Plaintiff's subjective complaints. Tr. at 22.

While the ALJ did survey the objective medical data (Tr. at 21-22), he did not point out how that evidence contradicts Dr. Daas' assessment. For instance, the ALJ cited a November 2009 MRI of the lumbar spine that revealed "mild to moderate dextroscoliosis, degenerative disc at L4-5 with mild disc bulge and posterior midline annular tear, and degenerative disc at L5-S1 level with mild disc bulge and facet hypertrophy with mild foraminal stenosis." Tr. at 21 (citing Tr. at 694-701). He also cited an MRI of the cervical spine in July 2010 that revealed "mild foraminal stenosis at C5-6 and normal alignment of the vertebral bodies with no evidence of subluxation or disc space narrowing," and an MRI of the lumbar spine performed at the same time that "showed degenerative disc bulge and facet hypertrophy at L4-5 and K5-S1 levels with bilateral foraminal stenosis at L5-S1 level." Tr. at 21 (citing Tr. at 810-24). While the MRI results do provide objective medical evidence, the ALJ provided no explanation as to why this evidence contradicts Dr. Daas' statements. Some portions of the MRIs describe conditions as "mild," but others show "annular tears," "degenerative discs," and "disc bulge." Without more explanation, this evidence does not refute Dr. Daas' assessment and may in fact support it.

The ALJ also stated that "[i]n general, physical examinations reveal no apparent acute or chronic distress as she has been described as 'sitting comfortably,' exhibiting

1    normal gait and station, and not observed using an assistive device." Tr. at 22.  The ALJ
2    did not provide specific citations to the record, and so it is unclear to which examinations
3    he was referring.  Because the ALJ did not provide sufficient detail, the Court cannot
4    evaluate the extent to which these physical examinations undermine Dr. Daas' opinion.
5    The ALJ's bald recitation of test results – without explanation or citation – is not
6    sufficient to discount the opinion of a treating physician.  It does not satisfy the Ninth
7    Circuit's requirement that the ALJ provide "a detailed and thorough summary of the facts
8    and conflicting clinical evidence, stating his interpretation thereof, and making findings."
9    *Thomas*, 278 F.3d at 957.

10   Dr. Daas opined that Plaintiff's pain would constantly interfere with her attention
11   and concentration.  Tr. at 1020.  The ALJ found this opinion less than credible because,
12   he said, Dr. Daas' treatment notes contain no mention of concentration, attention, or
13   memory problems.  Tr. at  22.  This appears to be an inaccurate reflection of both Dr.
14   Dass' opinion and his treatment notes.  The report from Dr. Daas responds to this
15   question about the severity of Plaintiff's pain:  "How often is your patient's *experience*
16   *with pain* sufficiently severe to interfere with attention and concentration?"  Tr. at 1020
17   (emphasis added).  The question calls for the physician to evaluate the severity of the
18   patient's pain, not to evaluate the patient's overall attention and concentration powers.
19   The treatment notes clearly show that Dr. Daas treated Plaintiff for pain.  Tr. at 1014-
20   1019.  The Court therefore cannot conclude that the treatment notes are inconsistent with
21   the opinion provided by Dr. Daas.

22   In the response brief, the Commissioner cites to other portions of Dr. Daas'
23   treatment notes that he believes contradict the finding that Plaintiff was incapable of
24   lifting (Doc. 14 at 17), but the Court must review only the reasoning and factual findings
25   offered by the ALJ, not "*post hoc* rationalizations."  *Bray v. Comm'r of Soc. Sec. Admin.*,
26   554 F.3d 1219, 1225.  The ALJ did not provide this basis for rejecting Dr. Daas' opinion.

27   The ALJ also purported to discount Dr. Daas' opinion because his assessment
28   conflicted with the Plaintiff's activities of daily living.  Tr. at 22.  The ALJ does not

specify, however, what activities conflict with the Doctor's assessment, and his citations refer to over 100 pages in the record (Tr. at 521-536, 602-669, 829-884), making it impossible to discern his specific rationale. In an earlier portion of the decision, the ALJ mentioned that Plaintiff was able to "prepare simple meals, drive a vehicle, pay bills, handle a savings account, count change, and use a checkbook." Tr. at 21. The ALJ also noted that Plaintiff said she could lift up to two pounds, walk one eighth of a mile, and sit for five to ten minutes at a time. Tr. at 21. Dr. Daas opined that claimant could not carry anything, that she could stand or walk for under fifteen minutes during an eight hour workday, and that she could sit for two to three hours during a workday. While Dr. Daas' limitations are somewhat different than Plaintiff's self-reported limitations, both reports show significant limitations in carrying, standing, walking, and sitting. The differences are not so significant as to warrant the rejection of Dr. Dass' opinion.

Finally, the ALJ claims to have discounted Dr. Daas' opinion because he uncritically relied on Plaintiff's subjective complaints. Tr. at 20. Citing 42 U.S.C. § 423(d)(5)(A), Plaintiff maintains that once evidence of the underlying impairments are established, the regulations do not require the claimant to show additional evidence of the severity of the symptoms. The Ninth Circuit has held that "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The Commissioner responds that Plaintiff has conflated the standards for "evaluating a claimant's subjective statements with the standard for evaluating medical source opinions." Doc. 14 at 20. He argues that in the case of medical source opinions the ALJ must consider whether there is objective medical evidence to support the opinion. *Id*. The Ninth Circuit has held, however, that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v.*

*Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)). As in *Ryan*, there is nothing to indicate that Dr. Daas discredited Plaintiff's subjective complaints, nor is there evidence that Dr. Daas relied more heavily on the subjective complaints than on his own clinical observations. Additionally, some of the objective medical evidence – particularly the MRI results mentioned above – could be read as supporting Dr. Daas' conclusions.

In summary, the Court concludes that the ALJ failed to provide sufficient reasons for discounting the opinion of Plaintiff's treating physician.

### B. Plaintiff's Subjective Testimony.

Plaintiff claims that the ALJ erred by discounting her subjective testimony. Doc. 13 at 18. The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If the claimant meets this first test, and there is no evidence of malingering, the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). The ALJ may consider at least the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

The ALJ noted that the course of treatment is not what "one would expect for a totally disabled individual." Tr. at 21. After noting the MRI results and discussing the effectiveness of treatment that included "medial branch blocks in the cervical spine and

steroid epidural injections in the lumbar spine," the ALJ concluded that the "medical evidence of record diminishes the claimant's credibility as it shows of relatively conservative treatment." The ALJ does not explain why cervical blocks and lumbar steroid injections are too conservative for the physical symptoms Plaintiff alleges.

The ALJ also noted that Plaintiff attempted to work after the alleged onset date and that the work stopped because of a business-related layoff rather than the alleged disability. Tr. at 23. This led the ALJ to infer that Plaintiff's symptoms were not as bad as she claimed. The ALJ also cited to treatment records where Plaintiff reported limitations that are not as severe as those she reported to the ALJ. Tr. at 23. The ALJ also believed Plaintiff's activities of personal care and a normal social life undermined her claims about the severity of her condition, and that her relatively low earnings prior to her disability "suggests a lack of motivation and undermines the claimant's credibility." Tr. at 23.

Plaintiff's attempt to work after her disability onset date, the fact that her employment ended because she was laid off, her prior earnings history, and the disparities between her limitations as described in the record and presented to the ALJ, all constitute specific evidence on which the ALJ could rely in assessing her credibility. This evidence provides clear and convincing reasons for the ALJ to discount Plaintiff's subjective testimony. Thus, while not all of the ALJ's proffered reasons are correct, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective testimony.

### C.     Medical Opinion of Dr. Prieve.

The Commissioner concedes that Dr. Prieve's license was suspended in the State of Massachusetts when he examined Plaintiff and that the ALJ's reliance on his testimony was therefore barred by 20 C.F.R. § 404.1503a ("We will not use in our program any individual or entity . . . whose license to provide health care services is currently revoked or suspended by any State licensing authority[.]"). The Commissioner contends that Dr. Prieve's opinion was harmless because the ALJ found it only "partially persuasive." Doc. 14 at 22 (citing Tr. at 22).

While the ALJ did not wholly credit his conclusions, Dr. Prieve was the only examining physician in the case and his opinion directly contradicted the opinion of the treating physician. Tr. at 22. Without that contradiction, more weight may have been afforded to the opinion of the treating physician. Furthermore, the Commissioner concedes that Dr. Prieve's report made up part of the record that was considered by Dr. Handal and Dr. Susman when forming their opinions regarding Plaintiff's condition. Doc. 14 at 22. The Court concludes that consideration of Dr. Prieve's opinion was not harmless error.

### D.     Remedy.

Having decided to vacate Defendant's decision, the Court has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). In *Smolen v. Chater*, the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. 80 F.3d 1273, 1292 (9th Cir. 1996); *see Varney v. Sec. of Health & Human Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988) (*Varney II*) ("In cases where there are no outstanding issues that must be resolved before a proper determination can be made, and where it is clear from the record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony."); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (same); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("In a recent case where the ALJ failed to provide clear and convincing reasons for discounting the opinion of claimant's treating physician, we accepted the physician's uncontradicted testimony as true and awarded benefits.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988)); *Hammock v. Bowen*, 879 F.2d 498,

503 (9th Cir. 1989) (extending *Varney II*'s "credit as true" rule to a case with outstanding issues where the claimant already had experienced a long delay and a treating doctor supported the claimant's testimony).

Since *Varney* was decided, the overwhelming authority in this Circuit makes clear that the "credit as true" doctrine is mandatory. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 926 (9th Cir. 2002); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Lingenfelter v. Astrue*, 504 F.3d. 1028, 1041 (9th Cir. 2007).[1]

In this case, the ALJ has proffered legally sufficient reasons for discounting Plaintiff's subjective complaints, but failed to advance legally sufficient reasons for rejecting the opinion of the Plaintiff's treating physician. In *Stevens v. Astrue*, No. CV 11-1978-PHX-DGC, 2012 WL 2017947 (D. Ariz. June 5, 2012), this Court noted a similar anomaly and held that, despite the fact that the treating physician's statement was based at least in part on Plaintiff's subjective complaints, under Ninth Circuit law the doctor's statement still must be credited as true and the case remanded for an award of benefits. The vocational expert in this case testified that if Plaintiff suffered from the limitations in Dr. Daas' report, she would be incapable of all work. Tr. at 56. Crediting Dr. Daas' opinion as true will therefore be dispositive in this case.

---

[1] This Court disagrees with the Ninth Circuit's credit as true doctrine. The Court is bound, nonetheless, to follow Ninth Circuit precedent.

**IT IS ORDERED** that the Commissioner's decision is **vacated** and the case is remanded for an award of benefits.

Dated this 17th day of December, 2012.

*David G. Campbell*
David G. Campbell
United States District Judge